UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19-cv-00012-FDW

| | |
|---|---|
| DIANE PETTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| ANDREW SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 13). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for supplemental security income under 42 U.S.C. § 405(g).[2] For the reasons which follow, Plaintiff's Motion is DENIED, Defendant's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

## I.   BACKGROUND

Plaintiff filed an application for Title II and Title XVI benefits on April 24, 2015, alleging disability beginning September 23, 2014. (Tr. 17). Plaintiff's application was denied on September 4, 2015 and denied upon reconsideration on October 23, 2015. (Tr. 17). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was ultimately

---

[1] Although the case was originally filed against Nancy Berryhill, then-Acting Commissioner of Social Security, the Court substitutes in her place Andrew Saul, who is now the Commissioner of Social Security, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)

1

held on August 9, 2017 in Charlotte, North Carolina. (Tr. 17). After the hearing, the ALJ denied Plaintiff's application in a written decision dated January 19, 2018. (Tr. 14).

In reaching her decision, the ALJ used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 17-19); 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since September 23, 2014. (Tr. 15). At step two, the ALJ determined Plaintiff has several "severe impairments," including degenerative disc disease (DDD), diabetes mellitus, osteoarthritis, a history of asthma, and obesity, as defined in 20 C.F.R. § 416.920(c). (Tr. 15-16); 20 C.F.R. § 416.920(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "The Listings"). (Tr. 26).

The ALJ determined Plaintiff could "perform light exertional work" despite her impairments. (Tr. 17). In her residual functional capacity ("RFC") analysis, however, the ALJ added the following limitations:

> [Plaintiff] can climb ladders, ropes, and scaffolds no more than occasionally. [Plaintiff] can balance, stoop, kneel, crouch, crawl, and climb ramps and stairs no more than frequently. [Plaintiff] can have no more than frequent exposure to pulmonary irritants such as dust, fumes, odors, and gases.

(Tr. 17). At step four, and with these limitations in mind, the ALJ observed that Plaintiff was unable to perform any past relevant work. (Tr. 21). At the fifth and final step, and in light of Plaintiff's age, education, work experience, RFC, and the Vocational Expert's ("VE") testimony,

the ALJ determined Plaintiff could perform "jobs that exist in significant numbers in the national economy," including Office Helper, Plastic Hospital Products Assembler, and Shipping and Receiving Weigher. (Tr. 22). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 22-23).

After receiving the ALJ's decision, Plaintiff requested review by the Appeals Council, which was denied on November 21, 2018. (Tr. 5). Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought the suit before the Court to challenge the Commissioner's decision, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

3

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual

4

functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional

5

capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff alleges the following five errors: (1) the ALJ erred by inadequately evaluating the opinion evidence of Dr. Ocloo; (2) the ALJ erred by inadequately evaluating the opinion evidence of Dr. Cloninger; (3) the ALJ failed to adequately consider Plaintiff's use of a cane; (4) the ALJ failed to adequately consider Plaintiff's obesity; and (5) the ALJ's appointment did not comply with the Appointments Clause of the United State Constitution at the time her decision was issued. (Doc. No. 12). The Court addresses each argument in turn.

#### A. Dr. Ocloo's Opinion Evidence

Plaintiff asserts the ALJ erred by failing to provide a discussion or adequate explanation for why she gave Dr. Ocloo's medical opinion evidence only "some" weight, and therefore, "failed to build an accurate and logical bridge between the evidence and her conclusions, resulting in an RFC that is not supported by substantial evidence." (Doc. No. 12, p. 9-12). In support of her assertions, Plaintiff argues that the ALJ provided only a one sentence conclusion that Dr. Ocloo's examination findings do not prohibit all work, and that this did not explain how the ALJ "implicitly determined that Dr. Ocloo's examination findings were not entitled to more weight." (Doc. No. 12, p. 10).

6

Plaintiff's reading of the ALJ's decision is incorrect. It is well settled in the Fourth Circuit that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 370 F.3d 171, 178 (4th Cir. 2001). The ALJ's decision to give Dr. Ocloo's opinion evidence only "some" weight results from the inconsistent medical evidence in the record and Plaintiff's own testimony at the hearing. The ALJ's decision reads:

> Dr. Ocloo's examination findings were not consistent with an inability to perform all work, and Drs. Virgili and Olivares opined that she could perform at least light exertional work with postural and environmental limitations. Some weight is given to these opinions, but the undersigned finds a light exertional level to be more appropriate in view of examination findings and [the Plaintiff's] testimony regarding her limitations provided at the hearing.

(Tr. 20). "[T]hese opinions" in the ALJ's decision clearly includes the opinion evidence of Dr. Ocloo, Dr. Virgili, and Dr. Olivares. Consequently, the ALJ provided a sufficient explanation for why Dr. Ocloo's opinion evidence was afforded only "some" weight.

In reviewing for substantial evidence, a court may not re-weigh conflicting evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The ALJ, and not the court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted "some" weight. The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision.

**B. Dr. Cloninger's Opinion Evidence**

7

Plaintiff next alleges the ALJ erred by failing to explain why Dr. Cloninger's opinion was due "little" weight. (Doc. No. 12, p. 12-16; Doc. No. 15 p. 2-4). With respect to Dr. Cloninger, the ALJ's decision stated, "Dr. Cloninger opined that [Plaintiff] had work-preclusive limitations, but little weight is given to this opinion, as it is based on a short treatment history and is not supported by the other objective medical evidence of record, including his own treatment records." (Tr. 20). Although Dr. Cloninger was a treating physician of Plaintiff, Dr. Cloninger's opinion cannot be afforded controlling weight because, as explained by the ALJ, the opinion is not consistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight).

As mentioned above, this Court is not at liberty to re-weigh conflicting evidence or make credibility determinations. See Craig, 76 F.3d at 589. Here, the ALJ has supported her decision with substantial evidence—namely, that Dr. Cloninger's opinion was inconsistent with other substantial record evidence—to give Dr. Cloninger's opinion little weight. As such, this Court must defer to the ALJ's decision regarding Dr. Cloninger's opinion.

**C. Plaintiff's Use of a Cane**

Plaintiff also argues the ALJ erred by inadequately analyzing Plaintiff's use of a cane. (Doc. No. 12, p. 17-22; Doc. No. 15, p. 4-5). Although Dr. Cloninger's opinion evidence provided Plaintiff required the use of a cane for imbalance, pain, and weakness (Tr. 480), the ALJ

8

determined, and the Court affirms above, that Dr. Cloninger's opinion evidence was contradicted by other substantial evidence in the record and consequently deserved only "little" weight.

It is undisputed that Plaintiff's use of a cane is self-prescribed. (Doc. No. 12, p. 18). Consequently, the ALJ was not required to perform a medical necessity analysis with respect to Plaintiff's use of a cane. Christon v. Colvin, 3:15-cv-00305-RJC, 2016 WL 3436423, at *5 (W.D.N.C. June 15, 2016) (quoting Morgan v. Comm'r, Soc. Sec, No. 13-cv-2088-JKB, 2014 WL 1764922, at *1 (D. Md. Apr. 30, 2014)) (holding that "absent a doctor's prescription, a claimant's self-prescribed cane use is merely a specific subjective complaint that must be substantiated by objective medical evidence, and the ALJ is not obligated to perform a medical necessity analysis"). In Sawyer v. Astrue, 775 F.Supp.2d 829, 834-836 (E.D.N.C. 2011), the Court held that where the record contained ample objective evidence supporting the prescription and necessity for Ms. Sawyer's use of a cane, the ALJ erred in failing to include the use of a cane in Ms. Sawyer's RFC. In Hall v. Berryhill, No. 3:16-cv-841, 2018 WL 1612206, at *3 (W.D.N.C. Apr. 3, 2018), the Court upheld the ALJ's decision regarding Mr. Hall's use of a cane, where the ALJ noted that Mr. Hall was prescribed a cane but analyzed the prescription alongside evidence showing Plaintiff's strength in his lower extremities.

Despite Plaintiff's contentions otherwise, the ALJ sufficiently substantiated Plaintiff's subjective complaint regarding her use of a cane by objective medical evidence:

> "The evidence primarily shows that [Plaintiff] experiences some tenderness and limitation of motion in her lower back and hips, but does not establish that these conditions prevent her from performing all work. She uses a cane and the record shows some gait abnormality, but her cane was not prescribed by a doctor. There is no indication of deficits in her lower extremity strength and sensation, and diagnostic imaging has not established the presence of any condition that would be expected to prevent all work." (Tr. 20).

9

Although the ALJ does not explicitly mention Plaintiff's use of a cane again, she does state that she considered the combined effect of all of Plaintiff's impairments:

> [T]he undersigned has considered the combined effect of the claimant's impairments and the possibility that the combined effect can be greater than each of the impairments considered separately. The claimant's impairments have been considered when assessing the claim under the listings and during the other steps of the sequential evaluation process, including when assessing the claimant's residual functional capacity.

(Tr. 20). The ALJ's consideration clearly includes Plaintiff's obesity, as the ALJ found that Plaintiff's obesity was a "severe impairment." (Tr. 15). Further, Plaintiff's reliance on <u>Sawyer</u> and <u>Hall</u> are misguided, as the plaintiffs in both <u>Sawyer</u> and <u>Hall</u> were prescribed a cane. Regardless, this case is more analogous to <u>Hall</u>, as the ALJ found the record provides "no indication of deficits in [Plaintiff's] lower extremity strength and sensation." (Tr. 20). Thus, the ALJ properly analyzed Plaintiff's use of a cane in her RFC determination.

### D. Plaintiff's Obesity

Plaintiff argues the ALJ erred by inadequately analyzing Plaintiff's obesity. (Doc. No. 12, p. 22-23). Although Plaintiff concedes the ALJ's decision explicitly states Plaintiff's obesity was factored into her RFC assessment, Plaintiff claims it is unclear whether the ALJ assessed the effect of Plaintiff's obesity on her ability to sustain work activities and perform routine movement and necessary physical activity within the work environment as required by SSR 02-1p. (Doc. No. 12, p. 23; SSR 02-1p).

SSR 02-1p instructs SSA ALJs to assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, 2002 WL 34686281, at *7 (Sept. 12, 2002). SSR 02-1p further provides that "the combined effects of obesity with other impairments may be greater than might

10

be expected without obesity." Id. In Yarborough v. Colvin, No. 1:13-cv-00180-MR; 2014 WL 4700684 (W.D.N.C. Sept. 22, 2014), the Court opined "[e]ven if the ALJ did not explicitly state how he took into account the Plaintiff's obesity when reaching his conclusions, it is evident from his decision that he implicitly considered this impairment by adopting the conclusion of reviewing physicians who directly addressed Plaintiff's obesity and found it imposed no additional impairments. As such any error of the ALJ in failing to explicitly discuss in the decision the effects of the Plaintiff's obesity was harmless". Id. at *2 (citing McKinney v. Astrue, No. 1:11-cv-00199-MR-DLH, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012) (Howell, M.J.), adopted by 2013 WL 300822 (W.D.N.C. Jan 25, 2013) (Reidinger, J)). Therefore, where an ALJ considers and adopts the conclusions of reviewing physicians who directly address Plaintiff's obesity, the ALJ need not explicitly explain his assessment of the effects of the claimant's obesity.

Plaintiff's argument is unsubstantiated. In her decision, the ALJ states:

> While there is no listing for obesity, SSR 02-1p instructs that obesity is a risk factor that can complicate an individual's existing impairments and increase an individual's likelihood of developing additional impairments, and directs that obesity be considered the claimant's obesity (at the hearing she testified that her height is 5'5" and her weight is approximately 320 pounds, giving her a body mass index (BMI) of 53.2) and has factored this into her residual functional capacity assessment below.

(Tr. 17). The ALJ later confirmed that she "considered the combined effect of the claimant's impairments and the possibility that the combined effect can be greater than each of the impairments considered separately," and clarified, "[t]he claimant's impairments have been considered when assessing the claim under the listings and during the other steps of the sequential evaluation process, including when assessing the claimant's residual functional capacity." (Tr. 20). Because the ALJ specifically stated she had "considered the combined effect of [Plaintiff's]

11

impairments," she should be taken at her word. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("The Commissioner, through the ALJ and Appeals Council, stated the whole record was considered, and, absent evidence to the contrary, we take her at her word.")

Moreover, the ALJ gave some weight to Dr. Ocloo's opinion evidence. Dr. Ocloo's medical opinion evidence notes Plaintiff's weight of 304 pounds and height of 64.5 inches. (Tr. 399). The opinion evidence continues by describing Plaintiff as obese. Id. Although the evidence reads: "[Plaintiff's] coordination, station, and gait were all very poor. She leaned very, very heavily on the cane that she used," Dr. Ocloo noted that Plaintiff's motor strength was 5/5 in the upper extremity and 5/5 in the lower extremity. Id.

As discussed previously, the ALJ found that Dr. Ocloo's medical opinion evidence was inconsistent with a finding that Plaintiff had an inability to perform all work and explicitly stated that she gave Dr. Ocloo's opinions some weight. By adopting medical opinion evidence that directly addressed Plaintiff's obesity and found it imposed no additional impairments, such as that provided by Dr. Ocloo, it is clear the ALJ considered the impairment. See Yarborough, 2014 WL 4700684 at *2. Further, Plaintiff offers no evidence establishing that any further reduction in her RFC was required based on her obesity or the combined effect of the impairment with her others. Consequently, the Court finds any error regarding Plaintiff's obesity in the RFC determination to be harmless.

E.  Appointments Clause

Plaintiff alleges the ALJ who presided over her case was not properly appointed under the

Appointments Clause of the Constitution.[3] (Doc. No. 12, p. 23); U.S. Const. art. 2, § 2, cl. 2. Plaintiff bases her argument on a recent Supreme Court case requiring Securities and Exchange Commission ("SEC") ALJs to be appointed under the Appointments Clause. Lucia v. S.E.C., 138 S.Ct. 2044, 2055 (2018). Defendant asserts that, under Lucia, an Appointments Clause challenge must be raised at the administrative level or it is waived. Further, Defendant argues, and Plaintiff does not dispute, that Plaintiff did not raise the issue at the administrative level. (Doc. No. 14, p. 11).

Neither the Supreme Court nor the Fourth Circuit has ruled on whether Lucia applies to SSA ALJs. There are vast differences in the administration of the SEC and SSA, including the number of ALJs in each administration[4] and the authority and review of each type of ALJ.[5] Plaintiff relies on Sims v. Apfel in asserting she is not required to raise the Appointments Clause issue with either the ALJ or Appeals Council prior to raising it at the district court level. Sims v. Apfel, 530 U.S. 103, 112 (2000) ("[W]e hold that a judicially created issue-exhaustion requirement is inappropriate"). However, the Sims Court explicitly stated that "[w]hether a claimant must exhaust issues before the ALJ is not before us." Sims, 530 U.S. at 107.

Circuits are split on whether the failure to timely raise an Appointments Clause claim at

---

[3] [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law[.]" U.S. Const. Art. 2, § 2, cl. 2.

[4] Compare Lucia, 138 S.Ct. at 2049 ("The SEC currently has five ALJs.") with Doug Walker, Answer the Call to Public Service, Become an Administrative Law Judge, Soc. Sec. Admin. (Feb. 11, 2020 at 10:09am), https://blog.ssa.gov/answer-the-call-to-public-service-become-an-administrative-law-judge/ (observing the SSA employs about 1500 of the country's approximately 1700 ALJs).

[5] Compare Office of Administrative Law Judges, S.E.C., (Feb. 13, 2020, 12:05pm) www.sec.gov/page/aljsectionlanding (SEC ALJs have authority to issue a variety of sanctions and orders are reviewed by the Commission, followed by the Court of Appeals) with 20 CFR §§ 422.203, 408.1040 (SSA ALJs limited to holding hearings on only some topics where they can only affirm or deny benefits, and orders are subject to review of Appeals Council, followed by the District Courts).

the administrative level waives the claim. An overwhelming majority of the circuits that have examined the issue post-Sims have held that a plaintiff must raise *all* issues he or she wishes to bring in federal court at the administrative level. See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017) (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)) (holding that, at least when represented by counsel, "[claimants] must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); NLRB v. RELCO Locomotives, Inc., 734 F.3d 764, 795, 798 (8th Cir. 2013) (quoting Freytag, 501 U.S. at 893) (finding Appointments Clause claims waived if not raised before the original decisionmaker); Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012) (arguments not presented to ALJ or Appeals Council are waived); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (holding the court has "no intention of extending [the Sims] rule . . . to the failure of an applicant to raise an issue at the ALJ level"). The Third Circuit alone allows an Appointments Clause claim to be raised at the first time at the district court level. Cirko v Comm'r of Soc. Sec., 948 F.3d 148, 159 (3rd Cir. 2020) (finding an exhaustion requirement improper where (1) the SSA regulations regarding ALJ hearings do not explicitly address exhaustion and (2) the individual interest in having the constitutional issue resolved is much higher than the governmental interest in requiring exhaustion).

Moreover, in the wake of Lucia, most of the district courts who have ruled on the issue have rejected Appointments Clause claims that were not raised at the administrative level. See Dewbre v. Comm'r of Soc. Sec., No. 18-cv-4055-LRR, 2019 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019) (collecting cases from 23 districts). This district has consistently ruled the same. In Garrison v. Berryhill, No. 1:17-cv-00302-FDW, 2018 WL 4924554 (W.D.N.C. Oct. 10, 2018), the Court rejected Plaintiff's Appointments Clause claim for failure to raise it during the

administrative proceedings. Id. at *2 (citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)). In Shipman v. Berryhill, No. 1:17-cv-00309-MR, 2019 WL 281313 (W.D.N.C. Jan. 22, 2019), and Jenkins v. Berryhill, No. 1:18-cv-00050-MR, 2019 WL 1317730 (W.D.N.C. Mar. 22, 2019), the argument was again rejected as untimely twice where the Plaintiffs first moved for remand under the Appointments Clause months after filing their appeals with the district court. Shipman, 2019 WL 1281313 at *3; Jenkins, 2019 WL 1317730 at *3. Thereafter, courts have consistently made clear that failure to raise the issue at the administrative level waives the right to raise the issue at the district court. Wampler v. Saul, No 1:19-cv-00092-MOC, 2019 WL 6404403, at *6 (W.D.N.C. Nov. 27, 2019) ("Plaintiff's failure to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceedings forfeited his Appointments Clause claim"); Moehlenpah v. Berryhill, No. 5:18-cv-00153, 2019 WL 4745287, at *5 (W.D.N.C. Sept. 27, 2019) ("Plaintiff did not make a timely challenge at her hearing before the ALJ. Therefore, Plaintiff has forfeited any right to relief based on Lucia"). Finally, in Taylor v. Saul, No. 3:18-cv-00553-KDB, 2019 WL 6972845 (W.D.N.C. Dec. 18, 2019), the Court clarified, "[a] constitutional challenge under the Appointments Clause is 'nonjurisdictional,' and thus a party may forfeit its Appointments Clause argument by failing to raise it." Id. at *7 (citing RELCO Locomotives, Inc., 734 F.3d at 795, 798).

The majority viewpoint is further supported by the SSA's regulations requiring claimants to raise *all* issues, including objections to the ALJ conducting the hearing, at the administrative level. 20 C.F.R. § 404.933(a)(2) (Requiring a claimant submit in writing "[t]he reasons [the claimant] disagree[s] with the previous determination or decision"); §404.940 ("[O]bject[ions] to the [ALJ] who will conduct the hearing [must be raised at the] earliest opportunity.").

15

Plaintiff asserts she was not required to raise constitutional issues with the Social Security Administration because the SSA "lacks the authority" to provide a remedy for an Appointments Clause claim. (Doc. No. 12, p. 26). Plaintiff's assertion is incorrect for several reasons. First, the cases Plaintiff relies on do not follow her assertions. (Doc. No. 12, p. 25-27). The footnote cited in Moore refers specifically to criminal defendants, and Matthews provided a method for the Secretary of the Department of Health, Education, and Welfare to waive exhaustion requirements, not the claimant. Moore v. East Cleveland, 431 U.S. 494, 497, n. 5 (1977); Matthews v. Diaz, 426 U.S. 67, 76 (1976). Second, the rule Plaintiff relies on is not mandatory. Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994) ("[W]e agree that '[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.' This rule is not mandatory, however[.]"). The Supreme Court has since required plaintiffs to raise issues "'[e]ven if' the administrative body could not decide the constitutionality of a federal law." Elgin v. Dep't of Treasury, 567 U.S. 1, 17 (2012) (citing Thunder Basin Coal, 510 U.S. at 215). Finally, although the Administration may not be able to cure a particular ALJ's appointment retroactively, the Administration can remand the case to a properly appointed ALJ. In fact, the SSA has previously provided additional administrative review where claimants raised timely Appointments Clause challenges at the administrative level. See SSR 19-1p, 2019 WL 1324866 (Mar. 15, 2019) (providing additional administrative review where claimants raise timely Appointments Clause challenges to the ALJ or Appeals Council). Thus, there was a remedy available to Plaintiff at the administrative level had she raised this issue properly.

As the Supreme Court has stated, "[t]he Social Security hearing system is 'probably the largest adjudicative agency in the western world.' . . . [t]he need for efficiency is self-evident."

Barnhart v. Thomas, 540 U.S. 20, 28-29 (2003). Over 2 million disability claims were filed in 2019, and the SSA conducted approximately 693,000 hearings. SSA, Annual Performance Report, Fiscal Years 2018-2020, at 42, 46 (2019). Each case takes an average of 733 days to get through initial consideration, reconsideration, and a hearing. Id. at 43, 45, 47. As such, this Court considers the efficiency interest of the numerous claimants, the SSA, and the federal court system, in conjunction with the reasons set forth above, and finds that allowing a plaintiff to raise an Appointments Clause claim at any time would wreak havoc on the administration of social security claims. Requiring claimants to timely raise an Appointments Clause claim allows the SSA to provide a remedy to the claim at the administrative level, yielding efficiency and clarity throughout the social security claims process.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Doc. No. 11) is DENIED, Defendant's Motion (Doc. No. 13) is GRANTED, and the Commissioner's decision is AFFIRMED.[6]

IT IS SO ORDERED.

Signed: March 19, 2020

_____
Frank D. Whitney
Chief United States District Judge

---

[6] Under 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." The Court lacks the power to vacate the Commissioner's decision. Id. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this order.